IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 8, 2004 Session

## STATE OF TENNESSEE v. KENNETH LAMAR TUCKER

**Appeal from the Circuit Court for Van Buren County**
**No. 1668F    Larry B. Stanley, Judge**

---

**No. M2003-02847-CCA-R3-PC - Filed August 31, 2004**

---

The petitioner, Kenneth Lamar Tucker, plead guilty to one count of rape of a child in exchange for a fifteen-year sentence at 100%. In this post-conviction appeal, the petitioner argues that: (1) he did not knowingly and voluntarily enter his plea of guilt; (2) he was denied effective assistance of counsel; (3) he was denied the right to a trial by jury; (4) the state withheld exculpatory evidence; (5) the newly discovered exculpatory evidence entitles him to relief; and (6) the post-conviction court erred in refusing to admit trial counsel's case file into evidence. For the following reasons, we affirm the dismissal of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

J. Al Johnson, Spencer, Tennessee, for the appellant, Kenneth Lamar Tucker.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Dale Potter, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In September of 2000, the petitioner was indicted by the Van Buren County Grand Jury on one count of rape of a child. Pursuant to settlement with the State, the petitioner plead guilty to the charge as alleged in the indictment. During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that the petitioner digitally penetrated his four-year-old niece. Specifically, the prosecutor stated that

[o]n June 18, 2000, a referral was made to our office from the Department of Children's Services. My investigator Jason Rowland investigated that. We found that a minor child, Jane Doe, who was about four (4) years of age at the time had been penetrated vaginally with fingers. These had occurred on probably more than one occasion, but based on her statements and stuff, it was harder to narrow down all the exact time frames because there were a lot of individuals living in this house and her age limited her memory of when some of the events took place. . . . [The petitioner] was interviewed. He admitted to this incident happening. I think he says that it happened while he was giving her a bath and they were playing rubber ducky, or some kind of ducky situation in the bathtub. . . .

The trial court accepted the plea and sentenced the petitioner to a fifteen-year sentence. The petitioner subsequently filed a pro se petition for post-conviction relief. Counsel was appointed, the petition was amended, and, following an evidentiary hearing, the post-conviction court dismissed the petition.

Post-Conviction Hearing

At the post-conviction hearing, the post-conviction court heard testimony from the public defender and assistant public defender who represented the petitioner at the plea hearing as well as the petitioner himself.

The public defender testified that he reviewed a video tape of the petitioner's lengthy statement with one of his assistants and met with the petitioner one time to discuss his case in the jail cafeteria. He did not do any investigation on the case because he was not primarily responsible for defending the petitioner.

The public defender did not think that the petitioner had any issues with mental capacity though he knew that the petitioner had suffered a head injury as the result of a car accident. He stated that "as far as the defendant's mental capacity, when I spoke to him and on the video that I saw, I didn't see anything that rang a bell with me that he should be evaluated." Had the petitioner decided to go to trial, the public defender felt that the petitioner's mental health could be used to try to suppress his statement. The public defender felt that if they had chosen to go to trial, the defense team would have given the medical examination of the victim to a medical expert for evaluation. He and his assistant discussed the case and felt that there was a likelihood of a conviction if they went to trial and that the petitioner would probably be sentenced to the "higher end rather than the lower end of the 15-25 year range."

The assistant public defender was primarily responsible for the petitioner's defense. He estimated that he visited the petitioner at the jail approximately seven or eight times prior to the plea hearing. The assistant viewed the video-taped statement of the petitioner several times and took detailed notes. He felt like he spent a lot of time with the petitioner; their meetings usually lasted around thirty minutes each.

The assistant investigated the charges against the petitioner by speaking with Jason Rowland, an investigator. Mr. Rowland told the assistant that the victim, even though very young, was capable of giving straight-forward testimony about the abuse. The assistant public defender also reviewed the medical records in which the victim stated that "Uncle Kenny touched me there." The assistant filed a standard motion for discovery. In response to his request, the assistant public defender received the video-taped statement, the medical records, the petitioner's prior record, and a list of witnesses expected to testify on behalf of the State. The medical records did not indicate that the victim had any vaginal tears or bleeding but indicated that the victim "cried" when a q-tip touched her outer vaginal area. The final notation on the medical records was "vaginal irritation/alleged sexual abuse." After reviewing the medical records, the video tape of the petitioner's statement, and speaking with the investigator, the assistant determined that it was likely a jury would find the petitioner guilty.

At some point after the plea, the petitioner discovered that a video tape existed that contained an interview of the victim. The defense team did not have a copy of the video tape or transcript of the interview of the victim prior to the plea. In response to the petitioner's discovery request, the State claimed "none known" when asked to divulge any exculpatory information. At the post-conviction hearing, the assistant public defender testified that "it would have been nice to have had" the video tape or the transcript of the victim's statement prior to the plea and that some of the contradictions in the victim's statement could be considered exculpatory in nature. However, the petitioner's trial counsel both admitted that the State was not required to divulge information of this type that was not exculpatory in nature.

According to the assistant public defender, the petitioner did not initially want to plead guilty. The petitioner's father, who had died by the time of the post-conviction hearing, seemed to have an active role in his son's case. The assistant met with the petitioner's father on several occasions. The petitioner's father would then talk to the petitioner about what the assistant said. The assistant even lent the petitioner's father the video-taped confession. The petitioner's father was the one who eventually told the assistant to seek a plea agreement to avoid a jury trial.

The assistant was aware that the petitioner had some medical problems. He knew, for instance, that the petitioner was in a car accident when he was young and that he was on social security disability but was still able to work at a Taco Bell restaurant. The assistant felt that "in talking with . . . [the petitioner], he was able to communicate very effectively." He saw no indication that the petitioner was not competent enough to enter a voluntary and knowing guilty plea. The assistant felt that the petitioner understood the legal process and was able to assist in his defense.

The petitioner testified at the post-conviction hearing that he was not happy with his representation by the public defender. He wanted the attorneys to do DNA testing to show that the victim had not been sexually penetrated. The petitioner conceded that his initial understanding of the charges was that he was being accused of penile rape of the victim's vagina. Once the assistant public defender explained the charges to the petitioner, the petitioner understood that he was charged with digital penetration. Despite this understanding, the petitioner still felt that DNA evidence

would somehow be helpful to his defense. He claimed that he was tricked into saying that he touched the victim when the investigators told him that they had DNA evidence. The petitioner felt that he was encouraged by his father to plead guilty to avoid a twenty-five year sentence.

The petitioner spoke candidly about the car accident that led to his head injury and long-term memory problems. He was also able to tell the court that he was married to the victim's aunt and, at the time of the offense, lived in a trailer with the victim, her mother, and others. A total of seven or eight people lived in the trailer. The petitioner admitted that he took a bath with the victim, but denied that he touched her vagina.

The petitioner was able to remember standing in front of the judge on the day of his plea and recalled signing the plea agreement. The petitioner remembered the trial court conducting a plea colloquy in which he was advised of his rights. At the time of the plea hearing, he thought that pleading guilty was in his best interest. At the time of the post-conviction hearing, the petitioner did not feel that pleading guilty was in his best interest. He stated that he plead guilty on his "own recognizance," but blamed his father for the ultimate decision and blamed the assistant public defender for urging his father to convince him to take the plea.

After hearing the evidence, the post-conviction court denied the petition for post-conviction relief. On appeal, the petitioner seeks a determination as to whether: (1) he knowingly and voluntarily entered his plea of guilt; (2) he was denied effective assistance of counsel; (3) he was denied the right to a trial by jury; (4) the state withheld exculpatory evidence; (5) the newly discovered exculpatory evidence entitles him to a new trial; and (6) the trial court erred in refusing to admit trial counsel's case file into evidence.

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Voluntary and Knowing Guilty Plea

On appeal, the petitioner challenges the voluntariness of his guilty plea. He contends that his mental disability resulting from a car accident invalidated the knowing and voluntary nature of his plea, that the defense team improperly urged the petitioner's father to induce him to plead guilty,

and that the assistant public defender expressed "shock" when the petitioner admitted his guilt rather than making a best-interest plea. The State argues that the record supports the trial court's conclusion that the petitioner's plea was knowing and voluntary.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript of the guilty plea hearing reveals that the trial court carefully and correctly informed the petitioner regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Further, he stated that he understood the plea agreement and the significance of the guilty plea hearing, and was entering his guilty plea voluntarily.

At the post-conviction hearing, the trial court heard testimony from trial counsel indicating that he met with the petitioner numerous times to discuss his case and the plea offer in detail, making a concerted effort to ensure that he understood the nature and circumstances of the plea. Neither the public defender nor his assistant felt that the petitioner's earlier brain injury in any way inhibited his ability to understand the nature and consequences of his guilty plea. In fact, the post-conviction court credited the testimony of both the public defender and his assistant that the petitioner showed no apparent mental deficiencies that would warrant an investigation or compromise the nature of his plea. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. We

conclude that the evidence shows that the petitioner's guilty plea was knowing and voluntary.[1] This issue is without merit.

## Ineffective Assistance of Counsel

The petitioner next argues that he was denied effective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

---

[1]The post-conviction court also determined that the petitioner and the assistant public defender thought that the petitioner was entering a best-interest or nolo contendre plea rather than a guilty plea. At the plea hearing, when asked whether he was pleading guilty or not guilty, the petitioner responded "guilty." Later, during the hearing, trial counsel asked to "make a clarification" and stated that the petitioner "believes this [the plea] to be in his best-interest." To this end, the post-conviction court found that the petitioner "anticipated and was advised that he would be entering a no contest plea and that the judgment should reflect a plea of no contest." Even though the post-conviction court found that the judgment should reflect a "no contest" plea rather than a guilty plea, the court determined that the error did not prejudice the petitioner in any way. We agree. A nolo contendre plea has the same effect as a guilty plea absent some statute or rule to the contrary. See State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim. App. 1991).

On appeal, the petitioner complains that his trial counsel was ineffective because he failed to: (1) provide expert testimony as to his mental condition or the victim's medical condition; (2) argue a motion to suppress the petitioner's confession prior to the entry of the plea; and (3) failed to interview potential witnesses. The State counters that the record supports the trial court's conclusion that the defense team provided effective representation.

The post-conviction court determined that trial counsel was not ineffective, determining instead that trial counsel had "extensive knowledge of the case." The post-conviction court individually addressed each of the petitioner's complaints with the representation and found that none of them had merit. In particular, the post-conviction court noted that neither of the attorneys noticed that the petitioner suffered any deficiency in the ability to understand their explanations and advice. Thus, counsel was not deficient for failing to seek a mental evaluation. Further, the post-conviction court determined that the assistant public defender had prepared a motion to suppress the petitioner's video-taped statement, but that the court had "no reason to believe that the statement would have been suppressed" had counsel filed the motion and argued it prior to the plea hearing. The post-conviction court also determined that trial counsel properly investigated the case. The court felt that while "further research and investigation would probably have been conducted as the case approached trial, at the time of the plea counsel for the Defendant knew virtually all the details of the case and was able to adequately advise the Defendant." The post-conviction court specifically found that the failure of trial counsel to interview the victim or the doctor that examined her was "harmless in light of counsel's extensive knowledge of the case." Finally, the post-conviction court found that the petitioner did not prove either that his attorney was "ineffective in not discussing the lesser included offenses with him" or that "but for counsel's errors, he would not have pled guilty and would have insisted on going to trial."

In order for the petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland, 466 U.S. at 687, the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. As stated previously, credibility determinations are

entrusted to the trial court.  Odom, 928 S.W.2d at 23.  The trial court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that there were numerous meetings between the petitioner and trial counsel in which the merits of the case were discussed.  Further, the petitioner has failed to establish that he suffered any prejudice as a result of trial counsel's representation.  We conclude that the record does not preponderate against the post-conviction court's findings.

Exculpatory Evidence

Next, the petitioner argues that the video-taped statement of the victim that was not disclosed in response to his discovery request prior to the plea was exculpatory information "in that it could be used to impeach the victim's testimony."  Specifically, he argues that the video tape "would reveal to defense counsel that the child had memory problems and [had] given conflicting testimony" and that the entire interview was not recorded and thus additional exculpatory evidence could exist. The State argues that the victim's statement as a whole was not exculpatory.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87; see also Hartman v. State, 896 S.W.2d 94, 101 (Tenn. 1995). In order to establish a due process violation under Brady, four prerequisites must be met:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information, whether requested or not);
> 2. The state must have suppressed the information;
> 3. The information must have been favorable to the accused; and
> 4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995).  The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence.  Id.  When determining the materiality of undisclosed information, a reviewing court must establish whether "in [the] absence [of the information, the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  Kyles v. Whitley, 514 U.S. 419, 434 (1995).  In other words, evidence is considered material only if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different.  Edgin, 902 S.W.2d at 390-91.

Here, the petitioner complains that the State in response to a discovery request, failed to turn over a video tape and corresponding transcript of an interview between Melanie Mooneyham, a

caseworker for the Department of Children's Services, and the victim.[2] According to the petitioner, the victim made inconsistent statements during the interview that could be viewed as exculpatory.

Our review of the transcript of the video tape reveals the following. The interview of the child took place on the day the victim was taken to the hospital. The victim stated that she was taken to the emergency room "because . . . [the petitioner] peeled my vagina inside" with his fingernail. She thought that he put his finger "inside her." The child stated that this occurred at "his house" which was also where the child lived at the time. The victim had her clothes off and was sitting in the floor "because . . . [I] was going to take a bath." The petitioner also had his clothes off in her "mama's room" that night. The victim was asked repeatedly how many times the petitioner had touched her and each time she responded, "Once." The victim claimed that she took a shower with the petitioner after he suggested that they "get in the shower together." The victim stated that the petitioner "snuck up behind" her and "peeled . . . [her] vagina." At one point, the victim was asked if the petitioner "peeled her vagina" before or after she was sitting in the floor in her mother's room and the child responded strangely that "he didn't do that in the dining room." The interviewer never mentioned the dining room. During another part of the interview, the child claimed that the petitioner "wasn't touching me" when asked if she was touching the petitioner.

At the post-conviction hearing, the assistant public defender testified that he spoke with Ms. Mooneyham prior to the plea and that she outlined the substance of the child's testimony but that he did not know that the tape existed. After reviewing the transcript of the interview, the assistant concluded that some of the contradictions in the child's statement could have been considered exculpatory.

The post-conviction court determined that "the alleged victim's statement was not exculpatory." After a review of the transcript, we agree. The petitioner has failed to establish that a Brady violation exists. While the petitioner's discovery request sought all exculpatory evidence, there was no proof introduced on behalf of the petitioner that the State withheld the information prior to the plea. Further, the information contained in the video-tape is hardly favorable to the petitioner. In fact, the majority of the statements by the victim appear to be inculpatory rather than exculpatory in nature. Moreover, the victim's statements do not satisfy the materiality prong of Brady. The petitioner has failed to show that having the video tape or transcript would have led to a reasonable probability that the result of the proceedings would have been different. After a de novo review, we

---

[2]It is not entirely clear from the record exactly when or how the petitioner learned of the existence of the video-taped interview, but it appears that he learned of the existence of the tape sometime after the plea hearing.

conclude that the record does not preponderate against the findings of the trial court. Consequently, this issue is without merit.[3]

## Denial of a Jury Trial

The petitioner next argues that he was denied his right to a trial by jury because "of his inability to withstand the pressure to plead and an unexplained failure of appointed counsel to try jury trials in Van Buren County." The State argues that the petitioner cites no authority to support his argument and has therefore waived the issue. We agree. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). This issue is without merit.

## Attorney's Case File as Evidence

Finally, the petitioner claims that the post-conviction court erred in denying his request to admit trial counsel's entire case file into evidence. Specifically, he argues that a "review of counsel's file would be the best indicator of the work done by counsel on behalf of the defendant" and "should always be admitted into evidence in a post-conviction hearing upon the defendant's request." The State counters that the claim does not "rise to the level of a constitutional infirmity" and, in any event, the petitioner waived the issue by failing to cite to authority.

While the petitioner failed to cite to any authority, he does claim to rely upon a trial brief that was written after the post-conviction court's denial of his request. In that brief, he argues that he has a right to view the contents of his trial attorney's case file including his attorney's work product to show that counsel was ineffective. The post-conviction court denied his request to introduce the case file into evidence. We have already concluded that the post-conviction court properly determined trial counsel's representation of the petitioner was not ineffective. We doubt that the introduction of trial counsel's case file would change that decision. Further, this ground for relief as espoused by the petitioner does not raise constitutional issues, and therefore, is not cognizable in a petition for post-conviction relief. See Tenn. Code Ann. § 40-30-106(g). Consequently, this issue is without merit.

---

[3]In a related issue, the petitioner claims that the "newly discovered evidence entitles the defendant to relief." He provides no additional argument, cites to no authority to support his claim, and does not include citations to the record. Because we determine that the victim's statement was not exculpatory within the meaning of Brady, there is no need to address the petitioner's claim. Nevertheless, this issue is waived due to the petitioner's failure to cite authority or provide argument. See Tenn. Ct. Crim. App. R. 10.

## Conclusion

For the foregoing reasons, we affirm the post-conviction court's dismissal of the petition.

_____
JERRY L. SMITH, JUDGE